NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**SARA ELIZABETH SIEGLER, SARA ELIZABETH SIEGLER,**
*Plaintiffs-Appellants*

**v.**

**SORRENTO THERAPEUTICS, INC., TNK THERAPEUTICS, INC., BDL PRODUCTS, INC., CARGENIX HOLDINGS LLC, PROSPECT CHARTERCARE ROGER WILLIAMS MEDICAL CENTER LLC, HENRY JI, STEVEN C. KATZ, TUFTS MEDICAL CENTER,**
*Defendants-Appellees*

**RICHARD PAUL JUNGHANS,**
*Defendant*

---

2020-1435

---

Appeal from the United States District Court for the Southern District of California in No. 3:18-cv-01681-GPC-MSB, Judge Gonzalo P. Curiel.

---

Decided: July 20, 2021

---

SARA ELIZABETH SIEGLER, Bedford, OH, pro se.

PETER STONE, Paul Hastings LLP, Palo Alto, CA, for defendants-appellees Sorrento Therapeutics, Inc., TNK Therapeutics, Inc., BDL Products, Inc., Cargenix Holdings LLC, Henry Ji. Also represented by KEVIN JAMES WHITE.

CHARLES M. MCMAHON, McDermott Will & Emery LLP, Chicago, IL, for defendants-appellees Prospect Chartercare Roger Williams Medical Center LLC, Steven C. Katz. Also represented by MICHAEL P. CHU; JIAXIAO ZHANG, Irvine, CA.

DAVID ALAN WOLLIN, Hinckley, Allen & Snyder LLP, Providence, RI, for defendant-appellee Tufts Medical Center.

_____

Before PROST, SCHALL, and O'MALLEY, *Circuit Judges.*

O'MALLEY, *Circuit Judge.*

Sara Elizabeth Siegler—and, purportedly, Sara Elizabeth Siegler ("SES"), a sole proprietorship that she owns and operates—appeals several decisions of the United States District Court for the Southern District of California. These include the denial of her motion for default judgment, the dismissals of her First and Second Amended Complaints, and the denials of her motions for reconsideration and motion for leave to amend. *See Siegler v. Sorrento Therapeutics, Inc.* (*Siegler I*), No. 3:18-cv-01681-GPC-NLS, 2018 WL 9516052 (S.D. Cal. Oct. 31, 2018); *Siegler v. Sorrento Therapeutics, Inc.* (*Siegler II*), No. 3:18-cv-01681-GPC-NLS, 2019 WL 581719 (S.D. Cal. Feb. 13, 2019); *Siegler v. Sorrento Therapeutics, Inc.* (*Siegler III*), No. 3:18-cv-01681-GPC-MSB, 2019 WL 1574321 (S.D. Cal. Apr. 11, 2019); *Siegler v. Sorrento Therapeutics, Inc.* (*Siegler IV*), No. 3:18-cv-01681-GPC-NLS, 2019 WL 2549248 (S.D. Cal. June 20, 2019); *Siegler v. Sorrento Therapeutics, Inc.*

(*Siegler V*), No. 3:18-cv-01681-GPC-NLS, 2019 WL 3532294 (S.D. Cal. Aug. 2, 2019); *Siegler v. Sorrento Therapeutics, Inc.* (*Siegler VI*), No. 3:18-cv-01681-GPC-MSB, 2019 WL 6877594 (S.D. Cal. Dec. 17, 2019). Because we are unpersuaded by Siegler's arguments, we *affirm*.

## I. BACKGROUND

### A. Factual Background

Given the procedural posture of this matter, we assume the facts Siegler alleges are true. Siegler, a resident of Ohio, owns and operates an Ohio-based sole proprietorship in her own name, SES. According to Siegler, SES is "an early stage micro-entity without any marketed pharmaceutical products to date" and a "potential participant in the CAR T cell pharmaceutical market both domestically and abroad."[1] *Siegler II*, 2019 WL 581719, at *2. In 2013, Siegler began collaborating with Dr. Richard Paul Junghans on developing new CAR T cell-based therapeutics for virology and oncology indications. See *id.* As part of the collaboration, Siegler authored two scientific articles, "In Vivo Testing of 3rd Generation Anti-CEA Designer CAR T Cells with Bcl-XL in Pancreatic Cancer" and "Phase 1b/2 Study of [2nd Generation] Anti-CEA Designer CAR T Cells in Breast Cancer."[2] *Id.* In 2015, Siegler registered these articles with the United States Copyright Office. *Id.* Around this time, Siegler made plans to use a facility at Prospect CharterCARE Roger Williams Medical Center LLC ("RWMC") to develop her research. *Id.*

Meanwhile, Dr. Junghans became employed on a part-time basis at Tufts Medical Center, a non-profit medical institution that is incorporated and has its principal place

---

[1]    CAR T cells, or CARs, are chimeric antigen receptor T cells. CAR T cells are a potential cancer treatment.

[2]    Anti-CEA CAR T cells target the carcinoembryonic antigen ("CEA") on tumor cells.

of business in Massachusetts. *See id.* at \*2, \*17. Dr. Junghans also founded a company, BDL Products, Inc. *Id.* at \*2. TNK Therapeutics, Inc., a wholly owned subsidiary of Sorrento Therapeutics, Inc., later acquired BDL Products. *See id.* at \*3. They executed a Stock Purchase Agreement that was allegedly contingent on an exclusive license to several CARs between TNK Therapeutics and CARgenix Holdings LLC. *Id.* According to Siegler, these agreements contained a restrictive covenant that prohibited Dr. Junghans and Tufts Medical Center from working with her on their original collaboration. *Id.* Siegler ultimately terminated her relationship with Dr. Junghans. *Id.*

In 2016, Sorrento Therapeutics and TNK Therapeutics entered into an Immunotherapy Research Collaboration Agreement with RWMC. *Id.* According to Siegler, the agreement effectively precluded her from using the RWMC facility at which she planned to develop her research. *Id.* A 2018 extension of the agreement expressly placed the operation of the RWMC facility under Sorrento Therapeutics's management. *See id.*

Sorrento Therapeutics also executed a Sponsored Research Agreement with Tufts Medical Center. *Id.* at \*4. Under that contract, Sorrento Therapeutics awarded Tufts Medical Center funding for "discrete research to be conducted by Dr. Junghans at Tufts Medical Center in Boston, Massachusetts." *Id.* The two entities executed a second Sponsored Research Agreement the next year. *See id.*

Around this time in 2016, Sorrento Therapeutics and TNK Therapeutics entered into several more contracts with other companies. These included joint-venture agreements to commercialize anti-CEA CAR T constructs abroad and licenses to CAR T constructs. *See id.*

Additionally, in 2016, RWMC initiated a clinical trial to study the use of anti-CEA CAR T cells as a potential treatment for liver and pancreatic cancers. *Id.* at \*3.

Finally, RWMC filed two U.S. patent applications, No. 15/210,818 ("the '818 application") and No. 15/099,370 ("the '370 application"). *Id.* at *4. Tufts Medical Center also filed a provisional application, Application No. 62/362,825 ("the '825 application"). *See id.* These applications related to anti-CEA CAR T cell constructs. The U.S. Patent and Trademark Office has only granted the '818 application, which issued on September 11, 2018, as U.S. Patent No. 10,071,118 ("the '118 patent"). *See id.*

## B. Procedural History

### 1. Dismissal of the First Amended Complaint

On July 24, 2018, Siegler and SES sued Sorrento Therapeutics, TNK Therapeutics, CARgenix Holdings, BDL Products, and Sorrento Therapeutics's CEO Dr. Henry Ji (collectively, the "Sorrento Defendants"), as well as the Board of Directors of Sorrento Therapeutics, RWMC, an equity owner of CARgenix Holdings named Dr. Steven C. Katz, and Dr. Junghans. On August 20, 2018, Siegler and SES filed a First Amended Complaint as a matter of right, naming Tufts Medical Center as an additional defendant.

According to the First Amended Complaint, the defendants unlawfully researched anti-CEA CAR T cell constructs, mentioned them in corporate presentations, and filed related patent applications. Based on these allegations, Siegler asserted claims of copyright infringement and trade secret misappropriation, as well as a Fifth Amendment takings claim. Based on her allegations of the defendants' various business and contractual dealings, Siegler also asserted violations of the Sherman Act, the Clayton Act, the Foreign Trade Anti-Trust Improvement Act, and California's Unfair Competition Law. Finally, Siegler sought a declaratory judgment that RWMC's '818 application was invalid.

The Sorrento Defendants moved to dismiss the First Amended Complaint. *Id.* at *1. Each of the other named

defendants, except for the Board of Directors of Sorrento Therapeutics, timely joined the motion to dismiss. *See id.* Tufts Medical Center also moved to dismiss for lack of personal jurisdiction. *Id.* at \*1, \*17.

The Board of Directors of Sorrento Therapeutics maintained that it is not a legal entity capable of being sued, as set forth in the Sorrento Defendants' motion to dismiss, but belatedly joined the motion over 21 days after service of process. *See* Notice of Joinder & Joinder by Putative Defendant the Board of Directors of Sorrento Therapeutics, Inc. in the Sorrento Defendants' Motion to Dismiss Plaintiff's Amended Complaint at 1, *Siegler II*, 2019 WL 581719 (No. 3:18-cv-01681-GPC-NLS); Memorandum of Points & Authorities in Support of the Omnibus Motion at 16–17, *Siegler I*, 2018 WL 9516052 (No. 3:18-cv-01681-GPC-NLS).

On October 30, 2018, Siegler moved for an entry of default and an order granting default judgment against the Board of Directors. Memorandum of Points & Authorities in Support of the Omnibus Motion at 16–17, *Siegler I*, 2018 WL 9516052 (No. 3:18-cv-01681-GPC-NLS). The district court denied Siegler's request for failure to secure an entry of default from the Clerk, pursuant to Rule 55 of the Federal Rules of Civil Procedure. *Siegler I*, 2018 WL 9516052, at \*2. The court denied Siegler's subsequent motion for reconsideration but welcomed Siegler to request an entry of default anew. *Siegler v. Sorrento Therapeutics, Inc.*, No. 3:18-cv-01681-GPC-NLS, 2018 WL 6303728, at \*1–2 (S.D. Cal. Dec. 3, 2018).

Siegler also moved for leave to amend the First Amended Complaint. *Siegler II*, 2019 WL 581719, at \*6. She sought to update her pleadings in two ways: (1) to incorporate the Patent Office's issuance of the '818 application as the '118 patent and (2) to identify a database of SES's, the defendants' copying of which potentially infringed Siegler's copyrights. *Id.*

On February 13, 2019, the district court granted both the Sorrento Defendants' and Tufts Medical Center's motions to dismiss and granted in part Siegler's motion to file a Second Amended Complaint. *Id.* at *20–21. The court decided these motions without oral argument, pursuant to Civil Local Rule 7.1(d)(1) of the Local Rules of Practice for the United States District Court for the Southern District of California ("Local Rules"), and vacated the scheduled hearing. *Id.* at *1, *21.

The district court dismissed all claims against the Board of Directors of Sorrento Therapeutics, as well as the takings claim against all defendants, with prejudice. The court explained that a corporate board of directors is not a separate entity from the corporation it manages and that it lacks the capacity to be sued. *Id.* at *14. The court found no evidence that the Board of Directors existed independent of Sorrento Therapeutics and rejected Siegler's argument that she could sue it pursuant to Section 14 of the Clayton Act—which provides for personal liability of a corporation's individual directors, officers, or agents where the corporation violates the penal provisions of antitrust law. *Id.* at *13–14. The court also explained that the Fifth Amendment applies only to government action. *Id.* at *16. Because the court found no basis here for extending the Fifth Amendment to private entities, the court determined that further amendment would be futile. *Id.* at *16–17.

The district court dismissed Siegler's copyright infringement, trade secret misappropriation, and antitrust claims without prejudice. *See id.* at *7–16. The court explained how the First Amended Complaint failed to state specific elements of each of these claims but granted Siegler leave to amend them. *See id.* at *7–16. The court advised Siegler to: (a) specifically identify the protectable elements of her copyrighted works that the defendants allegedly unlawfully copied, (b) clarify what trade secrets, if any, were misappropriated, (c) provide details about whether she redacted any of her submissions to the

Copyright Office that allegedly contained trade secrets, and (d) allege the existence of a relevant market and an antitrust injury, both of which were required for her antitrust claims. *See id.* at \*9, \*11–13, \*13 n.11. The district court also dismissed without prejudice Siegler's patent invalidity claim. *Id.* at \*14, \*16.

The district court further determined that it had no personal jurisdiction—general or specific—over Tufts Medical Center. *Id.* at \*18, \*20. The court found that the defendant was not at home in California and that its two contracts with Sorrento Therapeutics were insufficient minimum contacts with the State of California. *See id.* at \*18–20. The court rejected Siegler's argument that personal jurisdiction could be grounded in Section 12 of the Clayton Act—which provides nationwide personal jurisdiction for antitrust suits—because it had dismissed Siegler's antitrust claims. *Id.* at \*20. But the court granted Siegler leave to amend because a second amended complaint (a) might be able to allege general jurisdiction and (b) may adequately plead antitrust claims supporting personal jurisdiction under Section 12 of the Clayton Act. *Id.*

Finally, two other determinations by the district court are relevant to this appeal. First, the district court concluded that only Siegler herself, not SES, was a plaintiff. *Id.* at \*1 n.1. The court explained that, under Ohio law, a sole proprietorship has no legal identity separate from that of the individual who owns it. *Id.* Second, the district court declined to take judicial notice of several links to Securities and Exchange Commission ("SEC") filings in the First Amended Complaint. *Id.* at \*1 n.2. The court explained that, even though it could take notice of the content of the filings and the fact that they were filed, it could not take notice of the truth of the content or any inferences drawn therefrom. *Id.*

Siegler subsequently moved for reconsideration of the district court's dismissal of the First Amended Complaint.

*Siegler III*, 2019 WL 1574321, at *1. The court denied the motion, reasoning that Siegler had not identified any new evidence or new law and that the court had not committed clear error in dismissing the First Amended Complaint. *Id.* at *2. The court also faulted Siegler for failing to provide an affidavit accompanying her motion, as required by the Local Rules. *Id.*

2. Dismissal of the Second Amended Complaint

On May 3, 2019, Siegler and SES filed a Second Amended Complaint against all previously named defendants. *Siegler V*, 2019 WL 3532294, at *5. The Second Amended Complaint retained her claims of copyright infringement, trade secret misappropriation, a Fifth Amendment taking, antitrust violations, and invalidity of the '118 patent. *Id.* Siegler added new claims of unjust, uncompensated takings in violation of the Fourteenth Amendment and unjust enrichment. *Id.* Siegler also added challenges to the validity of RWMC's '370 application and Tufts Medical Center's '825 application. *Id.* at *6.

Siegler's factual allegations remained largely unchanged. *Id.* She added that she sent Dr. Junghans drafts of the articles that she later registered with the Copyright Office. *Id.* at *2, *6. She also alleged that Dr. Junghans executed a nondisclosure agreement with Sorrento Therapeutics that was intended to scuttle Siegler out of their planned collaboration and to deprive her of her right of first refusal on Dr. Junghans's inventions. *Id.* Finally, Siegler replaced the Board of Directors of Sorrento Therapeutics with its individual members. *Id.* at *6.

The Sorrento Defendants moved to dismiss the Second Amended Complaint, and the other defendants joined the motion. *Id.* at *1 & n.1. Tufts Medical Center also moved to dismiss for lack of personal jurisdiction. *Id.* at *1.

Around this time, Siegler moved for leave to file a third amended complaint to supplement the Second Amended

Complaint with "[n]ewly discovered information and additional updates" and a chart of various web documents. *Siegler IV*, 2019 WL 2549248, at *4. The court denied her leave because Siegler neither detailed how she would integrate the web documents into a third amended complaint nor attached a proposed amended pleading. *Id.* The court added that it was not apparent how the web documents related to or cured any of the deficiencies in Siegler's pleadings. *Id.* For similar reasons, the court denied Siegler's motion for reconsideration of her motion for leave to amend. *Siegler V*, 2019 WL 3532294, at *26. The court added that, after reviewing the purportedly newly discovered information that Siegler sought to include in a third amended complaint, "the Court is confident that none of the information contained therein would have cured the deficiencies" in her pleadings. *Id.*

On August 2, 2019, the court granted the Sorrento Defendants' motion to dismiss and denied Tufts Medical Center's motion to dismiss for lack of personal jurisdiction as moot. *Id.* at *1, *24. As before, the court decided these motions without oral argument. *Id.* at *1.

The district court dismissed all of Siegler's claims with prejudice because Siegler failed to cure the previously identified deficiencies. *See id.* at *7, *26. It found that further amendment would be futile. *See id.* at *12–13, *18, *20–22.

The court explained that Siegler failed to state a copyright infringement claim because the Second Amended Complaint did not plead protectable expression. *Id.* at *8. The court rejected Siegler's theory of copyright—"if I obtain copyright registration for an article *describing* a scientific discovery, course of treatment, or cell construct, then I also get to prevent others from performing, commercializing, or utilizing the same." *Id.* at *10. The court added that Siegler inadequately alleged copying, as well. For the same reasons, the court dismissed Siegler's unjust enrichment

claim, which was predicated on the same allegations as her copyright infringement claim.[3] *Id.* at \*12.

The court also explained that Siegler failed to state a trade secret misappropriation claim because the Second Amended Complaint did not specify any particular trade secrets. *Id.* at \*13. According to the court, Siegler's failure to allege that she redacted her copyright registrations when she filed with the Copyright Office precluded a favorable determination of trade secrets as a matter of law. *Id.* at \*12. Indeed, the court had previously explained that registration necessarily required some degree of public exposure and that submissions to the Copyright Office were publicly accessible. *See Siegler II*, 2019 WL 581719, at \*10 (citing, *inter alia*, 17 U.S.C. § 705(b)). Moreover, the court found that the Second Amended Complaint's new allegation that Siegler sent drafts of the copyrighted articles to Dr. Junghans contradicted the existence of a trade secret. *Siegler V*, 2019 WL 3532294, at \*13.

The court next explained that Siegler failed to state an antitrust violation because she inadequately alleged (1) the existence of a relevant market and (2) an injury to competition. *See id.* at \*14–18. Indeed, even assuming that Siegler had adequately alleged a market of CAR T cell goods, the court found that Siegler's newly pled allegations of other entities' viable CAR T projects contradicted her claim that the defendants had reduced competition in the market. *Id.* at \*17. The court dismissed Siegler's claims under Section 14 of the Clayton Act and California law because they depended on the same inadequate allegations as her antitrust claims. *Id.* at \*18.

---

[3]    The court additionally held that the Copyright Act preempted Siegler's state-law cause of action. *Siegler V*, 2019 WL 3532294, at \*12.

The court also reiterated that it previously dismissed Siegler's Fifth Amendment takings claim with prejudice because the Fifth Amendment generally only applies to government action. *Id.* at *21–22. For the same reason, the court dismissed Siegler's new Fourteenth Amendment claim with prejudice. *Id.*

The court finally dismissed Siegler's challenges to RWMC's '118 patent, its '370 application, and Tufts Medical Center's '825 application. *Id.* at *19–21.

Because the court dismissed the entirety of the Second Amended Complaint with prejudice, as noted previously, the court determined that Tufts Medical Center's motion to dismiss for lack of personal jurisdiction was moot. *Id.* at *24.

On December 17, 2019, the district court denied Siegler's motion to reconsider its dismissal of all claims in the Second Amended Complaint with prejudice. *Siegler VI*, 2019 WL 68877594, at *6. The court reaffirmed its substantive rulings, further explaining that (1) it applied the correct standard in resolving the defendants' Rule 12(b)(6) motion to dismiss and (2) its dismissal with prejudice due to the futility of further amendment was proper. *Id.* at *6–7.

### 3. Siegler's Appeals

On January 16, 2020, Siegler filed two notices of appeal. Her notice to the Ninth Circuit purported to appeal the district court's dismissal of her non-patent claims and its denials of her motions for reconsideration. Appellee's Appx. 149–50. Her notice to this court purported to appeal only the district court's dismissal of her patent invalidity claims. *Id.* at 153. In her briefing before this court, however, Siegler instead addressed other issues.

On January 27, 2020, the Ninth Circuit ordered Siegler to pay the filing and docketing fees for her appeal or to file a motion to proceed in forma pauperis within 21 days.

*Siegler v. Sorrento Therapeutics, Inc.* (*Siegler VII*), No. 20-55087, 2020 WL 4218311, at \*1 (9th Cir. 2020). On May 13, 2020, the Ninth Circuit dismissed Siegler's appeal for failure to comply with the court's orders, pursuant to Rule 42-1 of the Ninth Circuit Rules. *Id.* The next day, the district court set an appeal mandate hearing. On June 8, 2020, the district court ordered the spreading of the mandate.[4]

We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

## II. DISCUSSION

Siegler presents ten issues for review on appeal. These issues cover numerous substantive and procedural determinations by the district court from the denial of her motion for default judgment against the Board of Directors of Sorrento Therapeutics through the denial of her motion for reconsideration of the dismissal of the Second Amended Complaint. Siegler also objects to the district court's setting of an appeal mandate hearing date after she filed her notices of appeal. But before we reach Siegler's arguments, we first address the appellees' assertion that the Ninth Circuit's mandate and the district court's spreading of the mandate constituted an adjudication on the merits of Siegler's non-patent claims.

## A. The Ninth Circuit's Dismissal

Based on the Ninth Circuit's dismissal of Siegler's appeal for failure to comply with its orders, the appellees argue that the law of the case and collateral estoppel preclude

---

[4]    Some district courts schedule a date on which the mandate is "spread" and the federal appellate judgment becomes final. *See Calderon v. U.S. Dist. Ct.*, 128 F.3d 1283, 1286 n.2 (9th Cir. 1997), *overruled on other grounds by* 163 F.3d 530 (9th Cir. 1998) (en banc).

our consideration of the arguments Siegler makes as to her non-patent claims. We disagree; the appellees read too much into the Ninth Circuit's dismissal.

At the outset, we have exclusive jurisdiction over Siegler's entire case, including her non-patent claims, because this court's jurisdiction is case-specific, not issue-specific, and because this case in part arises under patent law. 28 U.S.C. § 1295(a)(1). Here, Siegler sought a declaratory judgment of patent invalidity, which the district court dismissed with prejudice. *See Zenith Elecs. Corp. v. Exzec, Inc.*, 182 F.3d 1340, 1346 (Fed. Cir. 1999) ("Our exclusive jurisdiction over matters arising in whole or in part under the patent laws is not defeated by the fact that the patent claims have been dismissed with prejudice."). That we have exclusive jurisdiction over Siegler's appeal counsels against treating the Ninth Circuit's dismissal for failure to pay fees or to move to proceed in forma pauperis as an adjudication on the merits.

The doctrine of the law of the case provides the appellees no help. Under that doctrine, when a court decides on a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case. *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 815–16 (1988). This rule of practice promotes the finality and efficiency of the judicial process by "protecting against the agitation of settled issues." *Id.* at 816 (internal quotation marks and citation omitted). While courts should be loath to revisit prior decisions of its own or of a coordinate court absent extraordinary circumstances, they have the power to do so in any circumstance. *See id.* at 817.

Here, the Ninth Circuit's dismissal of Siegler's appeal does not operate as a decision on the merits of Siegler's non-patent claims, particularly where our sister circuit lacked jurisdiction over any of Siegler's claims. Moreover, Ninth Circuit Rule 42-1 (as well as the dismissal order) contains no indication that a dismissal for failure to prosecute an

appeal to hearing necessarily constitutes an adjudication on the merits.

The appellees' reliance on *In re Wiersma*, 483 F.3d 933 (9th Cir. 2007), is misplaced. There, the Ninth Circuit considered whether the Bankruptcy Appellate Panel of the Ninth Circuit ("BAP") had mistakenly dismissed an appeal from the bankruptcy court for failure to prosecute when it intended to dismiss the appeal as interlocutory.[5] *See id.* at 939–40. The Ninth Circuit rejected this interpretation of the record, finding "no evidence that the BAP's intent was to dismiss the appeal as interlocutory." *Id.* at 940. Separately, it found that the bankruptcy court's decision—*i.e.*, the subject of the appeal before the BAP—was "a complete adjudication of the issues at bar." *Id.* at 938–39. The appellees conflate these determinations. The Ninth Circuit did not hold that the BAP's dismissal for failure to prosecute operated as a complete adjudication on the merits. We therefore conclude that the doctrine of the law of the case does not preclude our review of Siegler's non-patent claims.

The doctrine of collateral estoppel is even more inapplicable here. Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case. *Hydranautics v. FilmTec Corp.*, 204 F.3d 880, 885 (9th Cir. 2000). For the doctrine to apply, the party asserting preclusion must establish, *inter alia*, that the first proceeding ended with a final judgment on the merits. *See id.* Because Siegler's appeals to the Ninth Circuit and this

---

[5]    Circuit courts may establish a bankruptcy appellate panel composed of bankruptcy judges to hear and determine certain appeals from bankruptcy courts. *See* 28 U.S.C. § 158(a), (b)(1), (c)(1). The decisions of the bankruptcy appellate panel may be appealed to the circuit courts. *See id.* at § 158(c)(2), (d)(1).

court are not separate cases for purposes of collateral estoppel, and because the Ninth Circuit's dismissal was not a final judgment on the merits, collateral estoppel does not foreclose our review of Siegler's non-patent claims.

## B.  Siegler's Arguments on Appeal

Turning to Siegler's arguments on appeal, we review issues not unique to patent law under the law of the regional circuit in which the appeal would otherwise lie. *Centocor Ortho Biotech, Inc. v. Abbott Labs.*, 636 F.3d 1341, 1347 (Fed. Cir. 2011).  We group Siegler's arguments into three main categories.  First, Siegler challenges the dismissal of several of her claims with prejudice.  Second, Siegler protests the denials of many of her motions, including for default judgment, leave to amend, and reconsideration.  Third, Siegler objects to other decisions by the district court, including its decision not to take judicial notice, its decision to decide motions without oral argument, and its decision to set an appeal mandate hearing.

## 1.  Dismissal of Siegler's Claims

Siegler argues that the district court erroneously dismissed (a) her Fifth Amendment takings claim, (b) her trade secret misappropriation claim, and (c) her claims against the Board of Directors of Sorrento Therapeutics. *See* Appellant's Br. 1, 6–8, 16.  Siegler also disagrees with the district court's determinations that (d) Siegler is the only plaintiff in the action and (e) the court lacked personal jurisdiction over Tufts Medical Center. *See id.* at 8, 23.  We see no error.

The Ninth Circuit reviews the grant of a motion to dismiss *de novo*. *Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 652 (9th Cir. 2019).  To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Id.* (quoting *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009)).  Accordingly, we will affirm a dismissal for failure to state a claim where "there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *Id.*

Siegler asserts that "[t]he sufficiency of the [Second Amended Complaint] should not have been tested via [Federal Rule of Civil Procedure] 12(b)(6) . . . in light of the lessened standard that should have been applied to pleadings prepared by a *pro se* litigant."  Appellant's Br. 9.  Moreover, according to Siegler, any failure to state a claim for relief would be "a mere technical deficiency."  *Id.*; *see also id.* at 7 ("Within this context, technical deficiencies in the pleadings of Appellants were the basis for the prejudicial dismissals of CASD Document 75.").

We find no legal support for these arguments.  The Ninth Circuit makes clear that pro se litigants remain bound by the rules of procedure, even though courts are to construe their pleadings liberally.[6]  *See Ghazali v. Moran*, 46 F.3d 52, 54 (9th Cir. 1995); *see also Arunachalam v. Apple, Inc.*, 806 F. App'x 977, 980 (Fed. Cir. 2020) ("Dr. Arunachalam, though pro se, is required to follow the Federal Rules of Civil Procedure the same as every other party that litigates in the federal courts.").

Moreover, the failure to state a plausible claim is not a mere technical deficiency but a substantive shortcoming in a plaintiff's claim.  Under the Federal Rules of Civil Procedure, plaintiffs must state a cognizable basis for relief— based on their factual allegations and without regard to their ability to prove those allegations—before they can proceed to proving the allegations and obtaining relief.  A

---

[6]   To the extent Siegler argues that the district court did not construe her pleadings liberally, we disagree.  *See, e.g.*, *Siegler II*, 2019 WL 581719, at *8, *13; *Siegler V*, 2019 WL 3532294, at *18 n.13.

plaintiff's inability to simply state a cognizable basis for relief and the facts to support it is a "basic deficiency" that "should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558–60 (2007) (internal quotation marks omitted).

Finding no error with the Rule 12(b)(6) standard that the district court applied, we turn now to each of the claims about which Siegler makes arguments.

### a. Takings Under the Fifth Amendment

We agree with the district court that Siegler fails to state a cognizable takings claim under the Fifth Amendment. Siegler's principal shortcoming is that she has not alleged a government action or a private action fairly attributable to the government.

The Constitution generally protects individual rights "only from *government* action, not from *private* action." *Single Moms, Inc. v. Mont. Power Co.*, 331 F.3d 743, 746 (9th Cir. 2003); *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 935 (1982) ("[M]ost rights secured by the Constitution are protected only against infringement by governments."). Included in these individual rights is the Fifth Amendment's guarantee against government seizure of private property for public use without just compensation. The Takings Clause of the Fifth Amendment does not apply to a private party unless the private action may fairly be treated as that of the state. *See Single Moms*, 331 F.3d at 747.

Here, Siegler acknowledges that "[n]one of the Defendants-Appellees are the US government." Appellant's Br. 15; *see id.* at 1 ("One fact that was failed to be taken into account is the fact that the uncompensated, unjust takings of the intellectual property . . . of Appellants was and is being carried out by *non-governmental* entities." (emphasis added)). Moreover, even construing Siegler's pleadings liberally, neither the First nor the Second Amended

Complaints contain any allegations that *a governmental actor* took Siegler's intellectual property without just compensation. They instead relate to the alleged actions of private parties that are not fairly attributable to the government. For this reason, the district court correctly determined that Siegler's takings claim under the Fifth Amendment was not cognizable. At bottom, Siegler was not entitled to relief under the Fifth Amendment because she had not alleged a critical element to her claim—government action.

Siegler appears to suggest that she has a cognizable IP takings claim because the district court recognized that "a cognizable claim existed with regard to the IP of Appellants." Appellant's Br. 7; *see Siegler II*, 2019 WL 581719, at *8 n.5 ("Plaintiff might have articulated a claim of unlawful appropriation by contending that Defendants copied the copyrightable *expression* of her ideas."). We decline to read into the district court's encouragement an approval of Siegler's takings claim. The district court immediately clarified that, notwithstanding the potential to state a claim of copyright infringement, Siegler had not supplied the "critical element" of "alleging what if any part of her copyrighted works were protected subject matter." *Siegler II*, 2019 WL 581719, at *8 n.5. The court added that it could not supply this element for Siegler, advising her "to specifically to identify [sic] what *protectable* elements of her copyrighted works were copied unlawfully by defendants."[7] *Id.* at *8 n.5, *9.

---

[7] Siegler's arguments about her takings claim include two tables purporting to show the substantial similarity between Siegler's copyrights and the defendants' patent applications. Appellant's Br. 12–15. But, as the district court explained, the copyright laws do not protect concepts or ideas in copyrighted works. *See Siegler V*, 2019 3532294, at *10. Siegler makes no arguments on appeal

Siegler also argues that the district court inappropriately applied 28 U.S.C. § 1498, which governs patent and copyright infringement by the government. Appellant's Br. 15. But the district court did not apply, or even mention, this statute. Further, the district court dismissed Siegler's takings claim because the Fifth Amendment requires government action (and not because it conflated the Fifth Amendment with the statutory provision on copyright infringement by the government).

Siegler's reliance on *Kelo v. City of New London*, 545 U.S. 469 (2005), cannot rescue her takings claim. According to Siegler, *Kelo* stands for the proposition that "private property—such as the IP of a sole proprietorship—cannot be taken for public use without just compensation." Appellant's Br. 15; *see id.* at 3. Siegler is correct insofar as the government cannot take the private property of an individual for public use without just compensation. But, consistent with the Supreme Court's takings jurisprudence, the Court in *Kelo* considered whether the City of New London, Connecticut—*i.e.*, a municipal government—violated the Takings Clause. 545 U.S. at 472. *Kelo* does not recognize a right to just compensation from private entities. For at least this reason, the district court correctly dismissed Siegler's takings claim for failure to state a claim.[8]

---

that the defendants' patent applications are substantially similar to her *expression*.

[8] Siegler appears to argue that her procedural due process rights were violated by the appellees and the district court, both of whom, she alleges, deprived her of her interest in her two copyrights. *See* Appellant's Br. 15–16. Her assertion against the appellees fails because they are not government actors. *See Siegler V*, 2019 WL 3532294, at *22 & n.18 (citing *Geneva Towers Tenants Org. v. Federated Mortg. Investors*, 504 F.2d 483, 487 (9th Cir. 1974)). We see no basis to her assertion against the district court,

b. Trade Secret Misappropriation

We also agree with the district court that Siegler fails to state a cognizable trade secret misappropriation claim. Siegler's principal shortcoming is that she has not alleged the existence of a trade secret. The pleadings at most assert that the contents of Siegler's copyrights are protected by trade secret law. *See Siegler V*, 2019 WL 3532294, at *10. But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Moreover, we reject Siegler's argument that "documents filed with the [C]opyright [O]ffice are not discoverable under any circumstance by an outsider." *See* Appellant's Br. 16. Title 17 of the U.S. Code, Section 705, plainly permits public inspection of certain records and indexes, "as well as the articles deposited in connection with completed copyright registrations and retained under the control of the Copyright Office." 17 U.S.C. § 705(b); *see* 37 C.F.R. § 201.2 ("[I]nspection of copies or identifying material deposited in connection with a completed copyright registration may be undertaken in the Records Research and Certification Section."). The district court did not confuse the Copyright Office with the Patent Office, as Siegler argues. *See* Appellant's Br. 16. That the Patent Office publishes patent applications is not relevant to the Copyright Office's mandate to make deposited materials open to public inspection. Therefore, the district court's dismissal of Siegler's trade misappropriation claim was proper.

c. The Board of Directors of Sorrento Therapeutics

We next agree that Siegler fails to state a cognizable claim against the Board of Directors of Sorrento

---

which patiently explained its rulings and painstakingly afforded Siegler an opportunity to present her arguments in writing.

Therapeutics because it is not a separate legal entity from Sorrento Therapeutics.  Under the Federal Rules of Civil Procedure, for parties other than an individual or corporation, their capacity to be sued is determined "by the law of the state where the court is located," here, California.[9] Fed. R. Civ. P. 17(b).  The Supreme Court of California has not addressed whether a corporation's board of directors may be sued as a legal entity separate from the corporation itself.  But California's Corporation Code only identifies a corporation or association as entities that may be sued. Cal. Corp. Code § 105; *see Theta Chi Fraternity, Inc. v. Leland Stanford Junior Univ.*, 212 F. Supp. 3d 816, 821 (N.D. Cal. 2016).  We are persuaded that, under California law, a plaintiff may not sue a corporation's board of directors as an entity separate from the corporation.

Siegler argues that Section 14 of the Clayton Act provides "the authority under which the [Sorrento Therapeutics] Board of Directors could be property [sic] sued." Appellant's Br. 7.  We disagree.  Section 14 of the Clayton Act extends a corporation's violation of a penal provision of the antitrust laws to *individual* directors who authorized or ordered the acts constituting the violation.  *See* 15 U.S.C. § 24.  Moreover, the statutory provision is *penal*; it cannot apply to Siegler's civil case.  *See id.* ("[S]uch violation shall be deemed a misdemeanor . . . ."); *United States v. Wise*, 370 U.S. 405, 414–15 (1962).  It does not authorize Siegler to bring *civil* claims against the *collective* Board of Directors of Sorrento Therapeutics.  The district court therefore correctly dismissed the Board of Directors of Sorrento Therapeutics from the First Amended Complaint.

---

9    Rule 17(b) of the Federal Rules of Civil Procedure provides two exceptions.  Siegler does not argue that these exceptions apply, nor do we see their relevance here.

#### d.  SES

We also agree with the district court that the only plaintiff in this action is Siegler.  Under Ohio law, "[a] sole proprietorship has no legal identity separate from that of the individual who owns it." *Patterson v. V & M Auto Body*, 589 N.E.2d 1306, 1308 (Ohio 1992).  Here, there is no dispute that SES is a sole proprietorship.  Necessarily, SES "has no legal identity separate from that of the individual who owns it," *i.e.*, Siegler.  *See id.*

Siegler argues that such a determination would deny either her or SES's due process rights.  *See* Appellant's Br. 23.  According to Siegler, she could not organize SES as a corporation because corporations must be represented by counsel in court.  *Id.*  Siegler explains that, if SES were a corporation, it "would have been denied total access to the legal system by its current inability to afford legal representation." *Id.*  We are unpersuaded by Siegler's argument because it assumes its conclusion.  For the district court's decision to deny either her or SES's due process rights, Siegler and SES must be distinct legal identities, each possessing its own distinct right to due process.  But *Patterson* requires treating Siegler and SES as having the same legal identity with one and the same right to due process.  Because the district court's decision did not violate Siegler's due process rights, it necessarily did not violate SES's.[10]

Siegler also argues that her and SES's inability to fully exercise their rights to legal redress based on the corporate structure of SES "may unfairly single out sole proprietors in a manner that itself may be deemed unconstitutional within the framework of the Bill of Attainder." *Id.*  Bills of attainder are "[l]egislative acts, no matter what their form,

---

[10]    We are bound by the facts before us and decline to consider the implications of the hypothetical where SES is a corporation.

that apply either to named individuals or to easily ascertainable members of a group in such a way as to inflict punishment on them without a judicial trial." *United States v. Brown*, 381 U.S. 437, 448–49 (1965); *see* U.S. Const. art. I, §§ 9–10.  Siegler's argument lacks merit, at minimum, because there is no legislative act here, much less one that punishes named individuals or easily ascertainable members of a group without a judicial trial.  For these reasons, the district court properly dismissed SES.

e. Personal Jurisdiction over Tufts Medical Center

Finally, we decline to reach the issue of whether the district court had personal jurisdiction over Tufts Medical Center.  We are unpersuaded by Siegler's arguments that the district court erred in dismissing the First and Second Amended Complaints against all defendants (including Tufts Medical Center).  It is therefore unnecessary to further review whether Siegler's claims against Tufts Medical Center would have been properly dismissed for a lack of personal jurisdiction.

2. Denials of Siegler's Motions

Siegler argues that the district court erroneously denied (a) her motion for default judgment against the Board of Directors of Sorrento Therapeutics, (b) her motion for leave to file a third amended complaint, and (c) several of her motions for reconsideration.  We disagree.

The Ninth Circuit reviews denials of motions for default judgment, leave to amend, and reconsideration for abuse of discretion.  *See Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986) (motions for default judgment); *Curry v. Yelp Inc.*, 875 F.3d 1219, 1224 (9th Cir. 2017) (motions for leave to amend); *SEC v. Platforms Wireless Int'l Corp.*, 617 F.3d 1072, 1100 (9th Cir. 2010) (motions for reconsideration).  A district court abuses its discretion when it makes an error of law, when it rests its decision on clearly erroneous findings of fact, or when the appellate court is

left with "a definite and firm conviction that the district court committed a clear error of judgment." *United States v. 4.85 Acres of Land*, 546 F.3d 613, 617 (9th Cir. 2008) (citation omitted).

### a. Motion for Default Judgment

The district court did not abuse its discretion in denying Siegler's motion for default judgment against the Board of Directors of Sorrento Therapeutics. Rule 55 of the Federal Rules of Civil Procedure provides a two-step process for obtaining an entry of default judgment. *See Eitel*, 782 F.2d at 1471. First, a party must secure an entry of default by the court clerk. *See* Fed. R. Civ. P. 55(a). The entry of default is "an official recognition of the fact that one party is in default." 10A C. Wright & A. Miller, *Federal Practice and Procedure* § 2692 (4th ed.). A defendant who fails to answer within the time specified by the rules is in default even if that fact is not officially noted, *i.e.*, even if there is no entry of default. *See id.*; *Hughes v. Port of Seattle*, Nos. 87-3627, -3650, 1988 WL 60164, at *2 (9th Cir. 1988) (unpublished table decision) ("The party must seek leave even if there has not been a formal entry of default once the party is technically in default."). Second, only after an entry of default may a party seek a default judgment. *See* 10A C. Wright & A. Miller, *Federal Practice and Procedure* § 2682.

A district court may set aside an entry of default for good cause under Rule 55(c) or a final default judgment under Rule 60(b). Fed. R. Civ. P. 55(c). Courts have been extremely lenient in treating other pleadings as requests for leave to set aside a default. *See Hughes*, 1988 WL 60164, at *3; *Davies v. Guinn Res. Co.*, No. 91-15065, 1992 WL 317249, at *1 (9th Cir. 1992) (unpublished table decision) ("The district court was free to construe Guinn's [belated] answer as a motion to set aside the default, and its order denying the motion to strike must be viewed as setting aside Guinn's default.").

Here, the district court denied Siegler default judgment because Siegler had not secured an entry of default prior to moving for default judgment. *Siegler I*, 2018 WL 9516052, at \*2. While we are inclined to agree with that conclusion, we also affirm the denial of Siegler's motion for a different reason. *See Eitel*, 782 F.2d at 1471 ("[W]e need not agree with the district court's reasoning to affirm. We may affirm on any ground finding support in the record."). As already discussed, the Board of Directors of Sorrento Therapeutics is not a separate legal entity from the corporation it serves. It is beyond dispute that Sorrento Therapeutics timely responded to the First Amended Complaint by filing a motion to dismiss in part on that ground. Therefore, the Board timely responded to the First Amended Complaint because it and the corporation are the same entity.[11]

Siegler argues that the district court denied her motion for default judgment "on a mere technicality (*i.e.*, that Appellants had not first asked the Clerk for the entry of default)." *See* Appellant's Br. 22. We do not need to reach that argument because we affirm the denial of her motion for a different reason. Moreover, denying default judgment here furthers the goal of resolving cases on their merits. *See* 10A C. Wright & A. Miller, *Federal Practice and Procedure* § 2681 ("Under modern procedure, defaults are not favored by the law and any doubts usually will be resolved in

---

[11]    Even if the Board were a separate entity from the corporation it serves, we would view the district court's denial of Siegler's motion as setting aside the Board's default. *See Hughes*, 1988 WL 60164, at \*2 ("[T]he district court denied Hughes' motion for a default judgment. We find that in so doing, the court implicitly set aside the default."). There is good cause to set aside the default here because the Board disputed whether it had the capacity to be sued. *See* Fed. R. Civ. P. 55(c).

favor of the defaulting party. The reason for this attitude is that contemporary procedural philosophy encourages trial on the merits."). For these reasons, the district court did not abuse its discretion in denying Siegler's motion for default judgment.

### b. Motion for Leave to Amend

The district court also did not abuse its discretion in denying Siegler leave to file a third amended complaint. Federal Rule of Civil Procedure 15(a) provides that a party may amend its complaint once "as a matter of course" before a responsive pleading is served. *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 185 (9th Cir. 1987); Fed. R. Civ. P. 15(a)(1). In all other cases, a party may only amend its pleading with the opposing party's written consent or the court's leave. Fed. R. Civ. P. 15(a)(2). A court should freely give leave when justice so requires. *Id.* But the liberality in granting leave to amend is "subject to the qualification that amendment of the complaint does not cause the opposing party undue prejudice, is not sought in bad faith, and *does not constitute an exercise in futility.*" *DCD Programs*, 833 F.2d at 186 (emphasis added) (citations omitted).

Here, the district court denied Siegler leave because Siegler had not explained how the newly discovered information in a chart of links to web documents "relate to or cure any of the deficiencies identified" in the First Amended Complaint. *Siegler IV*, 2019 WL 2549248, at *4. In denying Siegler's corresponding motion for reconsideration, the district court added that, after reviewing the newly discovered information, it was confident that none of that information "would have cured the deficiencies identified in the [First Amended Complaint], or in the present order dismissing the [Second Amended Complaint]." *Siegler V*, 2019 WL 3532294, at *26. We see no error of law or clearly erroneous findings of fact in the district court's analysis. This is particularly so where (1) the district court advised Siegler on how to amend her claims when it

granted her leave to file a Second Amended Complaint, (2) Siegler did not cure those deficiencies in the Second Amended Complaint, and (3) Siegler's newly discovered information did not cure her pleadings. *See Siegler II*, 2019 WL 581719, at \*9, \*11–13, \*13 n.11; *Siegler V*, 2019 WL 3532294, at \*7, \*12–13, \*17, \*23–26. Further, we are unpersuaded by Siegler's bare, unsupported contention in her brief that the deficiencies in the Second Amended Complaint "could have been cured by additional amendment(s) had leave been granted to file a third amended complaint." *See* Appellant's Br. 9.

Siegler presents three further reasons for reversing the district court's denial of her motion for leave to amend. We reject each of them.

First, Siegler argues that the district court should have permitted her more than a single opportunity to amend her complaint. *See id.* at 10. But this argument is duplicative of her complaints about the district court's denial of leave to file a third amended complaint. And it does not address the court's conclusions that filing additional amendments would be futile. None of the cases Siegler cites mandates a minimum number of times a plaintiff may amend her pleadings. *See id.*

Second, Siegler argues that she was effectively denied a meaningful opportunity to be heard because the court dismissed her case before discovery and, therefore, she was "limited in the proof that could be provided." *Id.* at 10–11. This argument stems from a misunderstanding of the standards applied to a Rule 12(b)(6) motion. A court deciding such a motion must "accept all factual allegations in the complaint as true." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). No evidentiary proof

of factual allegations is required.[12]  Therefore, the district court did not deny Siegler a meaningful opportunity to be heard when it dismissed her claims prior to discovery.

Third, Siegler argues that the district court gave leeway to the defendants by denying Siegler's motion for default judgment on a "very minor technicality" but inconsistently denied her motion for leave to file a third amended complaint.  Appellant's Br. 11.  Because the Board of Directors of Sorrento Therapeutics is the same defendant as the corporation it serves, we disagree that denying Siegler's motion for default judgment is based on a very minor technicality.  *See supra* Section II.B.2.a.  Nor is that denial inconsistent with the district court's denial of Siegler's motion to amend.  Reviewing both of the district court's decisions does not leave us with a definite and firm conviction that the district court committed a clear error of judgment.  For these reasons, the district court did not err in denying Siegler's motion for leave to amend.

### c. Motions for Reconsideration

Finally, the district court did not abuse its discretion in denying Siegler's motions for reconsideration of (1) the dismissal of the First Amended Complaint, (2) the dismissal of the Second Amended Complaint, and (3) the denial of leave to file a third amended complaint.  Siegler does not explain how the district court abused its discretion, and we see no error of law or clearly erroneous findings of fact in

---

[12]  Siegler contends that *Haines v. Kerner*, 404 U.S. 519 (1972), confers on litigants a right to offer proof to support a complaint.  Appellant's Br. 11.  Not so.  The Court instead determined that the plaintiff's complaint survived a Rule 12(b)(6) motion and that the case could proceed to discovery:  the plaintiff's allegations were "sufficient to call for the opportunity to offer supporting evidence."  *Haines*, 404 U.S. at 519–20.

its analyses. Instead, Siegler protests the district court's discretion to grant reconsideration, which "essentially sets up *pro se* litigants for potentially erroneous and manifestly unjust dismissals." *See* Appellant's Br. 17. This is an incorrect understanding of our standard of review, where a district court abuses its discretion when it makes an error of law, when it rests its decision on clearly erroneous findings of fact, or when we are left with a definite and firm conviction that the district court committed a clear error of judgment. *4.85 Acres of Land*, 546 F.3d at 617. We therefore uphold the district court's denials of Siegler's motions for reconsideration.

### 3. Other Discretionary Decisions

Siegler challenges (1) the district court's refusal to take judicial notice of SEC filings and other documents linked in her pleadings, (2) the district court's vacatur of three hearings in this case, and (3) the district court's setting of an appeal mandate hearing date after she filed her notices of appeal. Appellant's Br. 8, 17–19, 22. Siegler also lists several "instances of perceived disparate treatment and/or prejudice." *See id.* at 21. We are not persuaded by these arguments.

The Ninth Circuit reviews the decision to take judicial notice for abuse of discretion. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018). It reviews a district court's compliance with local rules under the same standard. *Hinton v. Pac. Enters.*, 5 F.3d 391, 395 (9th Cir. 1993).

First, the district court did not abuse its discretion by declining to take judicial notice of SEC filings and other documents linked in Siegler's pleadings. Siegler argues that the documents in her pleadings "were representative of transactions or the commercial elements by which defendants unjustly enriched themselves," as well as of commercial use. Appellant's Br. 8. But a court may only take judicial notice of adjudicative facts—facts of a particular

case—that are not subject to reasonable dispute. *See* Fed. R. Evid. 201 & Notes. The district court may not take judicial notice of Siegler's desired *inference*, drawn from her linked documents, that the defendants unjustly enriched themselves. Moreover, taking judicial notice of the existence of certain commercial transactions, like the acquisition of BDL Products, does not aide Siegler. The district court dismissed her copyright infringement and unjust enrichment claims for a separate reason: Siegler failed to articulate the protectable elements of her copyrights. *See Siegler V*, 2019 WL 3532294, at *12.

Second, the district court did not abuse its discretion by vacating three scheduled motions hearings. It was within the court's discretion to resolve motions without oral argument. *See, e.g.*, *Carpinteria Valley Farms, Ltd. v. Cnty. of Santa Barbara*, 344 F.3d 822, 832 n.6 (9th Cir. 2003). Indeed, Civil Local Rule 7.1(d) expressly permits as much: "A judge may, in the judge's discretion, decide a motion without oral argument."[13] To the extent Siegler argues that the district court's vacaturs of hearings denied her an opportunity to be heard, the Ninth Circuit has resoundingly rejected that argument. "[A]n opportunity to be heard does not require an oral or evidentiary hearing on the issue. The opportunity to brief the issue fully satisfies due process requirements." *Pac. Harbor Cap., Inc. v. Carnival Air Lines, Inc.*, 210 F.3d 1112, 1118 (9th Cir. 2000) (citations omitted).

---

[13]    Rule 78 of the Federal Rules of Civil Procedure permit courts "by rule or order" to "provide for submitting and determining motions on briefs, without oral hearings." Fed. R. Civ. P. 78(b). Siegler may disagree with the Southern District of California's decision to permit rulings on motions without oral argument, but we see no basis for overturning that decision.

Third, even assuming (without deciding) that the district court abused its discretion in setting a date to spread the Ninth Circuit's mandate, we fail to see how that error would affect Siegler's rights. Indeed, we have exclusive jurisdiction over Siegler's entire case, *see supra* Section II.A, Siegler had an opportunity to present arguments to this court, and we have considered each of the arguments she raised. For this reason, even if the district court erred in this regard, the error would be harmless.

Finally, we consider the many instances of purported unfair treatment by the district court. *See* Appellant's Br. 20–21. While we can understand that Siegler feels unfairly treated as a result of the events she outlines, she was treated more than fairly by the district court.

### III. CONCLUSION

We have considered Siegler's remaining arguments and find them to be without merit. We therefore *affirm*.

### AFFIRMED

COSTS

No costs.